MORGAN v. HARPER.  (No. 8293.)

(Court of Civil Appeals of Texas.  Dallas. Feb. 14, 1920.  Rehearing denied March 20, 1920.)

1. PRINCIPAL AND AGENT ☞33—REVOCATION OF AUTHORITY, HOW MADE.

Authority of an agent, when revocable, may be revoked by a solemn instrument under seal, by a public and formal announcement or proclamation, or by a simple and private declaration.

2. BROKERS ☞10—AUTHORITY OF AGENT TO SELL LAND REVOCABLE.

The authority of an agent to sell land, who had no interest therein, but merely an interest in earning his compensation, was revocable, though the owner had agreed the agency should continue for a fixed period.

3. SPECIFIC PERFORMANCE ☞121(4)—EVIDENCE HELD TO SHOW REVOCATION OF AUTHORITY TO SELL.

In suit for specific performance of a written contract, made through an agent, to convey land, testimony held sufficient to show revocation of the authority of defendant's agent to sell the land by the declarations of defendant.

4. PRINCIPAL AND AGENT ☞151(3)—WITHOUT NOTICE OF REVOCATION ACTS OF GENERAL AGENT BIND PRINCIPAL.

Where an agent's authority is general, his acts within its scope, notwithstanding revocation of such authority, will continue to bind the principal to parties to whom the agent has been accredited, and who deal with him in good faith in reliance on his former authority, until due notice of its revocation has been given in the manner required by law for the class to which they belong.

5. BROKERS ☞100—REVOCATION OF AUTHORITY TO SELL EFFECTUAL THOUGH NOT COMMUNICATED TO BUYER.

Revocation of the authority of an agent or broker to sell defendant's land took effect as to plaintiff, to whom he sold after the revocation, though not made known to plaintiff; the authority being special, and confined to the doing of a single specific act.

6. SPECIFIC PERFORMANCE ☞119—BURDEN ON DEFENDANT TO SHOW NOTICE TO BUYER OF REVOCATION OF BROKER'S AUTHORITY.

In suit for specific performance by the buyer of land through defendant owner's agent to sell, if notice of revocation of the agent's authority was essential to render it effectual as to plaintiff, the burden was on defendant owner to show it.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by R. Morgan against J. W. Harper. From judgment for defendant, plaintiff appeals.  Affirmed.

Wear & Frazier, of Hillsboro, and Walker & Baker, of Cleburne, for appellant.

B. Y. Cummings and V. L. Shurtleff, both of Waco, for appellee.

TALBOT, J.  The appellant, R. Morgan, sued the appellee, J. W. Harper, for the specific performance of a written contract to convey 132 acres of land.  The material facts are, in substance, as follows:  The appellee was the owner of 132 acres of land situated in Hill and Johnson counties, which he desired to sell.  On the 16th day of June, 1917, appellee executed a contract in writing authorizing H. H. Simmons, of Hillsboro, Tex., as his exclusive agent, to sell said land at $125 per acre, obtaining therefor as the least cash payment $4,000.  The contract authorized a sale by Simmons at any time prior to December 1, 1917, the trade to be closed on or before January 1, 1918, and empowered him to execute contract of sale with the purchaser. In October, 1917, appellant agreed to purchase the land on the terms at which it was offered and signed a written contract to pay $125 per acre therefor in cash on the 1st day of January, 1918.  This contract was duly executed by the appellant and Simmons for the appellee.  The appellant was ready and able and offered to close the trade at the time

fixed by the contract, and the appellee refused to consummate it. The allegations were further to the effect that appellant was still ready and able to close the trade and offered to pay the entire consideration and prayed for a specific performance of the contract. The appellee pleaded a general denial and specially that he had, prior to the execution of the contract of purchase with appellant, revoked H. H. Simmons' authority to sell the land and that Simmons had no authority to execute said contract. By supplemental petition the appellant denied the allegations in the appellee's answer and specially alleged that, if the appellee revoked or attempted to revoke the contract, such action was unknown to him, and that at the time he executed the contract of purchase he believed that H. H. Simmons had authority to sell the land for appellee and to execute the contract, etc. The appellee by supplemental answer excepted to the allegations in the supplemental petition on the ground that it was immaterial whether the appellant knew that Simmons' authority had been revoked or not, if Simmons was not in fact authorized to bind appellee, and this exception was by the court sustained; that the fact that appellant believed Simmons was authorized to bind appellee could not confer any rights upon appellant as against appellee. A jury was impaneled to try the case on April 1, 1919, and after the introduction of the evidence was concluded the court instructed the jury to return a verdict in favor of the appellee. This was done, and judgment entered in accordance therewith. The appellant filed a motion for a new trial, which was overruled, and he perfected an appeal.

It is assigned, in substance, that the court erred in directing the jury to return a verdict in favor of the appellee, and in refusing to direct a verdict in favor of appellant, for the following reasons: First. Because uncontradicted evidence shows that the appellee listed the land in controversy for sale with H. H. Simmons by written contract, and authorized him to sell upon the terms stipulated therein at any time from the date of the contract to December 1, 1917, and to execute a written contract binding the appellee to convey the land; that on October 17, 1917, the appellant executed a contract with Simmons as agent for the appellee, binding appellant to purchase and the appellee to convey the land on the terms fixed by the contract; that appellant was ready and able to consummate the trade at the time fixed and offered to do so; that appellee refused to convey the land and close the trade; that at the time appellant executed the contract he placed in the hands of Simmons $2,000 as earnest money, and executed the contract and paid the earnest money, relying on Simmons' authority to act for appellee, and without knowledge of the alleged revocation of the contract or the attempt to revoke it. Second. The burden of proof was on the appellee to show that the appellant had notice of the attempted revocation of the contract authorizing Simmons to sell the land at the time of the execution of the contract of purchase and as there was no evidence tending to show such notice, the attempted revocation was without legal effect so far as appellant was concerned. Third. Because the contract authorizing H. H. Simmons to sell the land was not revoked by the appellee. The attempted revocation was without effect, for that the act of the appellee in sending word to Simmons not to sell the land for less than $135 per acre, and later to take the land off of the market and not sell it, did not have the effect of canceling or revoking the contract. Therefore the court should have given appellant's requested peremptory instruction to the jury to find for the appellant. The contention of the appellee is, in effect: (1) That since the undisputed evidence showed that, before and at the time H. H. Simmons signed appellee's name to the contract seeking to bind the appellee to convey the land to appellant, his authority to sell the same had been revoked, the court committed no error in instructing the jury; (2) that it was not necessary, in order for the revocation of Simmons' authority to operate against appellant, that notice of such revocation be given appellant before the contract of sale was entered into, and that, since the agent's authority had been in fact revoked before he attempted to bind the appellee to convey, it was immaterial whether appellant believed Simmons was appellee's agent or not, and that it was impossible for any act of Simmons to be within the apparent scope of his authority, when in fact no authority existed at all.

[1, 2] We have concluded that the contention of the appellee is at least substantially correct, and that the judgment of the district court should be affirmed. The means by which the authority of an agent, when revocable, may be revoked, are various. It may be done "by a solemn instrument under seal, by a public and formal announcement or proclamation, or by a simple and private declaration." 1 Mechem on Agency, § 613. In other words, a parol revocation will suffice. The authority of the agent, Simmons, in this case was clearly revocable. He had no interest in the thing itself to be done or in the result to be accomplished, but an interest merely in earning the compensation, which is not involved in this suit, agreed to be paid him for securing a purchaser ready, able, and willing to take the property upon the terms offered. The authority conferred upon Simmons by the appellee was what is often termed a bare or naked power, and in such case, even though the principal may have expressly

agreed that the agency shall continue for a certain period, as in the present instance, the general rule is that the principal may revoke it at his will at any time and with or without good reason therefor. 1 Mechem on Agency, §§ 563–566. As pointed out by Mr. Mechem, the cases most commonly arising in which the authority is deemed irrevocable are those in which the authority is said to be "coupled with an interest." The case at bar does not fall within that class of cases. That the testimony is practically conclusive that the appellee revoked the authority given H. H. Simmons before the contract of purchase was entered into seems clear. He testified without contradiction that he signed the "listing contract" introduced in evidence, and that he understood such instrument named $125 an acre as the price he was willing to take for his land at that time; that he was willing to take that price at that time, but later changed his mind about wanting to sell at that price because the land had advanced in value. He further testified that in the early part of August, 1917, he sent his son to H. H. Simmons and Simmons-Read Company, of which company the said H. H. Simmons was a member, requesting that his land be taken off the market; that the land was then worth $140 to $150 per acre and that he could not afford to sell for $125 per acre; that he told his son to tell Simmons not to sell the land for $125 per acre, but that he could sell it then for .$135; that his son came back and reported that his message had been delivered; that after his son had delivered the message he sent to Simmons, Mr. F. W. Simmons, connected with or member of the firm of Simmons-Read Company, brought a man out to look at the land, and that he told F. W. Simmons not to sell the land but to take it off the market. After receiving the messages referred to, Simmons-Read Company wrote the following letter to appellee:

"August 15, 1917.

"Mr. J. W. Harper, Grandview, Texas, R. F. D. No. 1—Dear Sir: Our Mr. F. W. Simmons states he saw you at your request and that you wanted to take your farm off the market. Your son came in here some days ago, and while the writer did not see him, we understand that he stated the farm ought to be sold for $135 per acre, that it was on the market too cheap, etc., and also indicated that he wanted the farm taken off the market. He did not leave the impression, however, in talking to our Mr. Wesley Read, that he was down here at your request, but rather that he was here on his own accord. We have shown the farm to a number of people, have it pretty well advertised, and have no reasonable doubt but that we will be able to sell it under the terms of our contract, and do not feel that we could afford to cancel it, as believe the contract is worth to us what the commission on the sale of the place and $125 per acre will amount to.

"Very truly, The Simmons-Read Company."

[3] H. H. Simmons testified that at the time he signed the contract attempting to bind Mr. Harper, the appellee, to convey the land, he had received notice from him, or had been notified, to withdraw the land from the market; that he learned that through F. W. Simmons; that he had the information that that appellee did not want to sell the land at the price named in the listing contract at the time he signed the contract with Mr. Morgan, the appellant; that he had received information from his brother that appellee did not want to sell the land and had withdrawn it from the market, and with that information he signed the contract to convey the land. The foregoing testimony is sufficient to show a revocation of the contract in question by the declarations of the appellee and the assignments and propositions of the appellant insisting that it is not must be overruled.

[4-6] The contention that the revocation of the authority of an agent does not take effect as to third persons until it is made known to them, as applied to the facts of this case, must also be overruled. Where the authority is general, the rule is well established that the acts of a former agent within the scope of his original authority will, notwithstanding its revocation, continue to bind the former principal to those parties to whom the agent had been thus accredited, and who deal with him in good faith in reliance upon his former authority, until due notice of its revocation has been given in the manner required by the law for the class of persons to which they belong. But with respect to third persons a distinction is made between the case in which the authority was a general or apparently continuous one and the case in which the authority was special, or confined to the doing of some specific act, and therefore ordinarily exhausted when that act is done. So that where the authority was special, or limited to the performance of a single act, it seems that the termination of such authority by the act of the principal is effectual as against third persons, whether they have or do not have notice thereof. The position assumed by the appellant in this case is that Harper, the appellee, once having conferred upon H. H. Simmons authority to sell the land in controversy at a given price within a given time, he was powerless to revoke such authority, so as to make the same effectual against the appellant, without giving the appellant notice of such revocation. At the time Simmons' authority was revoked he had not entered into negotiations with the appellant for the sale of the land, and did not know, so far as the record discloses, that appellant contemplated purchasing the land, either through Simmons as his agent or himself. Indeed, it appears, we think, by fair and reasonable inference at least, that appellant had no thought of entering into the ne-

gotiations for the purchase of the land until after Simmons' authority to act in the matter had been revoked. According to the undisputed testimony, he did not deal with H. H. Simmons directly in his attempted purchase of the land, but with D. K. Martin, of the Itasca Real Estate Agency, of Itasca, Tex., as the representative of H. H. Simmons, and it does not appear that he made any inquiry as to the authority of Simmons to enter into a contract for the sale of the land. It does not appear that he ever saw the contract entered into between appellant and Simmons, in which Simmons was given authority to make a contract for the sale of the land, or that he ever knew or was informed that Simmons by the terms of the agency contract was given until the 1st day of December, 1917, to negotiate a sale of the land. It is fair to presume that a simple inquiry of Simmons would have disclosed to appellant that Simmons was not authorized, at the time the contract of sale was executed, to represent and bind the appellee by such a contract. It is true that, if notice of the revocation of Simmons' authority was essential to render the revocation effectual as to appellant, the burden was upon appellee to show it. But, as indicated, the agency in this case being special or limited to the performance of a single act, a different rule to that where the agency is of a general character applies. Again, so far as the record discloses, appellee knew nothing of appellant's desire to purchase the land or his negotiations therefor, until after the contract of purchase had been entered into between him and Simmons, and it seems to us it would be "remarkable, as a legal consequence," that, under the circumstances disclosed in this case, it was incumbent upon appellee, who unquestionably had the right to revoke the authority given H. H. Simmons to sell his land, to give notice to appellant of the exercise of that right in order to render it effectual as to him, before the contract of sale in question was made. If it was obligatory upon appellee, in order to give effect to the revocation of Simmons' authority, to give appellant notice thereof, then it logically follows that such obligation rested upon him with respect to any other individual who might have dealt with him, and this would involve the necessity of giving notice of such revocation to every person who might have been in a position to negotiate for the purchase of the land. This, it occurs to us, would be unreasonable, and should not be declared to be the law.

This disposes of the controlling questions in the case, and renders it unnecessary for us to specifically discuss any other assignment of error. What we have said disposes of the most, if not all, of them, or renders such not so disposed of unimportant on this appeal.

The judgment is affirmed.